FILED
APR 0 8 2011

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

STATE OF OREGON, *ex rel*. JOHN R.
KROGER, Attorney General of Oregon,

                         Plaintiff,

     v.

JOHNSON & JOHNSON, MCNEIL-PPC,
INC., and MCNEIL HEALTHCARE, LLC,

                        Defendants.

Case No.: 11-CV-86-AC

OPINION AND ORDER

ACOSTA, Magistrate Judge:

*Procedural History*

I.  Current Complaint

      The State of Oregon ("Plaintiff") filed an action against Johnson & Johnson, and its

subsidiaries McNeil-PPC, Inc., and McNeil Healthcare, LLC, (collectively "Defendants") in state

court asserting claims under the state Unfair Trade Practices Act (OR. REV. STAT. § 646.605 to 646.656) (the "Complaint"). (Compl. 1.) In the Complaint, Plaintiff alleges that Defendants willfully engaged in unconscionable tactics and made false or misleading representations and/or omissions by manufacturing, advertising, promoting, distributing, and selling Motrin that "failed to dissolve at the rate required by specifications for good manufacturing practice" and then attempting to silently and surreptitiously recall the Motrin through a buy-back campaign managed by Inmar CLS contrary to the expectations of the Federal Drug Administration ("FDA"). (Compl. ¶ 17.) Plaintiff seeks civil penalties, attorney fees and costs, restitution for the Oregon purchasers of the defective Motrin, and an order requiring Defendants to "comply with good manufacturing practices for all over-the-counter drugs that it advertises, promotes and offers for sale or sells in Oregon" and to publicize any future product recalls which affect products offered for sale or sold in Oregon. (Compl. ¶ 82.)

II.  Removal

        Defendants removed the action to this court asserting that the case is fundamentally about "federal regulations and the interactions between Defendants and the federal agency that promulgated those regulations" and that "federal question jurisdiction exists because Plaintiff's claims that FDA did not approve Defendants' withdrawal of certain Motrin products; that some of those products may have failed to conform to FDA's current Good Manufacturing Practices ("cGMPs"); and that Defendants failed to disclose these facts to consumers, raise substantial disputed issues of federal law" under *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). (Notice of Removal ("Notice") at 2.) Defendants argued that the action is an attempt to enforce the federal Food, Drug, and Cosmetic Act (the "Act") and/or vindicate the actions

of the FDA and federal officials. Defendants also advised the court of a group of similar cases filed in at least three other district courts and consolidated in the United States District Court for the Eastern District of Pennsylvania (*In re McNeil Consumer Healthcare, et al. Marketing and Sales Practice Litigation*, MDL No. 2190 (the "Recall MDL")) and that Defendants intend to seek to transfer this case to the Recall MDL and to stay this case pending a ruling on the transfer.

III.  Recall MDL

The complaint filed in the Recall MDL is brought on behalf of a putative nationwide class of similarly-situated individuals (the "Recall Plaintiffs") who bought defective products made by Defendants, including the Motrin IB caplets which are at issue in the matter currently before the court. The Recall Plaintiffs name Defendants, as well as Inmar, as defendants and generally seek declaratory and other equitable relief, as well as drug payments and overpayments "as a result of Defendants' unlawful scheme and conspiracy involving the manufacture, distribution, marketing, promotion and sale of consumer products used to treat ailments in children and adults, and the suppression and concealment of material information from the Plaintiffs and the Class about such products, including their potentially harmful effects as a result of undisclosed manufacturing defects and deficiencies at the time of sale." (Notice, Ex. C at 2.) In addition to claims for violations of the Magnuson-Moss Act and various common law claims, including product liability, breach of implied warranties, negligent misrepresentation and fraud, conspiracy, and unjust enrichment, the Recall Plaintiffs allege violations of state statutes enacted to protect consumers against unfair, deceptive, or fraudulent business practices, unfair competition, and false advertising based on Defendants' failure to disclose material facts and/or false or misleading statements regarding deficiencies in their manufacturing processes and the quality of their products, and specifically identify OR. REV. STAT.

§ 646.605 *et seq.* as statutes that have been violated and upon which they rely. Additionally, the Recall Plaintiffs rely, at least in part, on the silent and surreptitious "Phantom Recall" of Defendants products by Inmar to support their RICO claim against Defendants and Inmar. The Recall Plaintiffs seek declaratory relief and damages on all claims as well as penalties and attorneys' fees for violations of the state consumer protection statutes.

Defendants filed a notice of potential tag-along action on January 24, 2011, asserting that the instant action and the Recall MDL assert common questions of law and fact identified as "allegations concerning the same purported 'phantom recall' of certain Motrin products and the same purported manufacturing deficiencies." The United States Judicial Panel on Multidistrict Litigation (the "Panel") issued a conditional transfer order on February 1, 2011. Plaintiff filed a notice of opposition to the conditional transfer order on February 8, 2011, and filed its opposition brief on February 22, 2011.

IV. Current Motions

Concurrent with its removal of this action from state court and the filing of the notice of potential tag-along action with the Panel on January 24, 2011, Defendants filed a motion to stay all proceedings in this action, including an expected motion to remand from Plaintiff, pending a ruling by the Panel on the transfer. Plaintiff filed the anticipated motion to remand on February 23, 2011.

*Legal Standards*

A district court has the inherent power to grant a motion to stay. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The existence of a conditional transfer order by the

Panel does not affect this power. The Rules of Civil Procedure of the Panel expressly state:

> The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel concerning transfer or remand of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.

Rule 2.1, 28 U.S.C. foll. § 1407 (2010). Staying an action pending a decision in concurrent multidistrict litigation proceedings is "within the court's discretion" and is "appropriate when it serves the interests of judicial economy and efficiency." *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). Courts should consider three factors when determining whether to stay an action: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases were in fact consolidated." *Id.*

Here, in addition to the conditional transfer to the Recall MDL and the motion to stay pending a ruling by the Panel on the transfer, we also have a motion to remand this case to state court. Judge Stewart recently addressed the appropriate test to apply to competing motions to stay and remand in a case facing a possible transfer to multidistrict litigation in the following manner:

> District courts are divided as to whether to address the competing remand and stay motions together or separately, and if separately, in what order, and whether to defer consideration of the motions to the MDL Panel. *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044-1047-48 (E.D. Wisc. 2001)(collecting cases). As it has in previous cases, this court will follow the analytical framework articulated in *Meyers*.
>
> Meyers outlines a three step methodology for deciding competing motions to remand and stay in cases involving pending transfer motions or conditional transfer orders in multidistrict litigation:
>
> > [A] court should first give preliminary scrutiny to the merits of the motion to remand. If this preliminary assessment suggests that removal was improper, the court should promptly complete its

consideration and remand the case to state court.

If, on the other hand, the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding.

\* \* \*

Only if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred should the court proceed to the third step and consider the motion to stay.

*Snyder v. Davol, Inc.*, CV No. 07-1081-ST, 2008 WL 113902, at \*3-4 (D. Or. Jan. 7, 2008)

*Motion to Remand*

I.  Preliminary Review of Remand Motion

Initially, the court must determine whether the issues raised in the motion to remand clearly establish removal was improper or are sufficiently factually and legally difficult to require additional consideration. The distinction between whether a case is clear or presents difficult jurisdictional issues appears, at least to some degree, to revolve around whether the motion to remand raises purely procedural issues as opposed to underlying substantive issues.

This distinction is supported by a review of the cases relied on by the parties which reveals that the majority of the cases presenting issues other than procedural matters in the remand motion were considered to present factually or legally difficult issues. *See Bd. of Trustees of Teachers Ret. Sys. v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 903-04 (N.D. Ill. 2002)(dispute with regard to whether bankruptcy statute requires all defendants to join in removal, the scope of "related to" jurisdiction under § 1334, and the proper resolution of the conflict between two statutes "raise thorny questions of law"); *Med. Soc. of New York v. Connecticut Gen. Corp.*, 187 F. Supp. 2d 89, 92 (S.D.N.Y.

2001)("[T]he jurisdictional question at hand is a complicated one involving the application of ERISA preemption to the multiple state law claims asserted."); *Rice v. Abbott Laboratories, Inc.*, No. C 02-3925-MJJ (N.D. Cal. Nov. 26, 2002)(application of ERISA preemption to state law claims and factual intricacies of alleged scheme and healthcare reimbursement issues present complicated jurisdictional issues); *Geller v. Abbott Laboratories, Inc.*, No. CV 02-00553 DDP (PLAx) (C.D. Cal. Mar 21, 2002)(ERISA preemption inquiry coupled with analysis of propriety of first served rule, taken as a whole, presented a "rather complicated picture."); *Ohio v. Dey, Inc.*, No. 1:06-CV-676 (S.D. Ohio Jan. 16, 2007) (question of whether state law claims requiring consideration of the meaning of average wholesale price under the federal medicare statute present a federal question under *Grable* coupled with technical issues related to removal and remand justified granting of stay pending decision to transfer to MDL); *Nevada v. American Home Products, Inc.*, No. CV-N-02-202-ECR (RAM) (July 26, 2002) (analysis of existence of separate and independent claims under § 1441(c) and whether medicaid fraud claim arises under federal law are both complicated questions).

Here, Defendants' removal and Plaintiff's motion to remand are grounded in substantive issues -- whether this action is fundamentally a case about federal regulations and the interactions between Defendants and the federal agency that promulgated those regulations -- not technical or procedural issues. Defendants argue that the Complaint raises issues relating to Defendants' compliance with the FDA's cGMP's and recall requirements. Plaintiff asserts that it alleges violations of state law only, that the claims do not rely on the FDA's definition of cGMP's or the FDA's recall requirements, and that the Complaint does not raise any questions of federal law. Plaintiff does not contend that the allegations in the Complaint do not raise issues of fact that are common to those raised in the Recall Plaintiffs' complaint but argues that federal jurisdiction must

be based on issues federal law, not fact. Plaintiff then engages in a lengthy discussion of why the allegations do not raise a substantial and disputed issue of federal law or implicate significant federal issues, as required for federal question jurisdiction under *Grable*.

Federal courts have original federal question jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331, 1441(b). Normally, cases brought under the general federal question jurisdiction of the federal courts are those in which federal law creates the cause of action. *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986). However, federal courts have recognized that a case may also arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law." *Franchise Tax Bd. v. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983). "Even though state law creates appellant's causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Id.* at 13.

A corollary to the well-pleaded complaint rule is the "artful pleading" doctrine. *Lippitt v. Raymond James Financial Services, Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). This doctrine provides that "[a]lthough the plaintiff is master of his own pleadings, he may not avoid federal jurisdiction by omitting from the complaint allegations of federal law that are essential to the establishment of his claim." *Hansen v. Blue Cross of California*, 891 F.2d 1384, 1389 (9th Cir. 1989)(quoting *Paige v. Henry J. Kaiser Co.*, 826 F.3d 857, 860 (9th Cir. 1987)).

In *Grable*, the Supreme Court held that federal question jurisdiction may exist under the artful pleading doctrine if the complaint necessarily raises "a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally

Page 8- OPINION AND ORDER                                                                    {SIB}

approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314-320 (federal jurisdiction applied to a state quiet title action because the meaning of a federal statue was the sole contested issue, there was a substantial national interest in the availability of a federal forum and the case had little impact on the federal-state division of labor because only a rare quiet title case would raise a matter of federal law). A state law claim thus raises a substantial federal question where it necessarily "involve[s] a dispute or controversy respecting the validity, construction or effect of [federal] law." *Id.* at 303 (citaiton omitted.)

There is no dispute that the product at issue, Motrin IB, is a product subject to regulation by the FDA. Plaintiff refers to, and relies on, numerous documents submitted by Defendants to the FDA, conversations between Defendants and the FDA, and the FDA's expectations that Defendants would conduct a public recall of the defective product in support of its state law claims. Furthermore, Plaintiff alleges that while the product "failed to dissolve at the rate required by specifications for good manufacturing practice," Defendants continued to "represent that the Motrin was manufactured consistent with good manufacturing practices." (Compl. ¶¶ 17-18.) Plaintiff also alleges, on numerous occasions, that Defendants failed to disclose that the Motrin "may not have been manufactured consistent with current good manufacturing practices," a term used and defined in the Act. (Compl. ¶¶ 52, 56, 63, 65, 70, 72, and 74.) Plaintiff seeks an order directing Defendants to comply with "good manufacturing practices" and to publicize any future recall of products sold in Oregon. Accordingly, a court could find that Plaintiff's state law claims implicate, to some degree, the Act and the FDA regulations.

At least one court has recognized that consideration of the well-pleaded complaint rule and the possibility that a state law claim raises a substantial federal question pose difficult jurisdictional

questions.  In *Meyers*, a case relied on by numerous courts, the court explained that one of the purposes of the "preliminary assessment of the jurisdictional issue" is to further judicial economy. "If the limited review reveals that the case is a sure loser in the court that has jurisdiction (in the conventional sense) over it, then the [transferor] court . . . should dismiss the case rather than waste the time of another court."  *Meyers*, 143 F. Supp. 2d at 1048 (quoting *Phillips v. Seiter*, 173 F.3d 609, 611 (7th Cir. 1999).  The *Meyers* court analyzed and rejected jurisdiction based on diversity finding that defendant clearly had not met its burden of proving the requisite jurisdictional amount. However, in its preliminary assessment of federal question jurisdiction, the court found that it was "not an easy matter to apply" the well-pleaded complaint rule to a complaint alleging only claims created by state statute but which may implicate or be governed to some degree by federal patent law. *Meyers*, 143 F. Supp. 2d at 1051.

Upon review of the removal petition and the arguments supporting the motion to remand, the court can not say at this time that removal was clearly improper.  Rather, the jurisdictional issues raised in the remand motion are similar to those found by the majority of the courts to be legally and factually complicated.  Accordingly, the court must next consider whether the issues have been addressed, or are likely to arise, in the Recall MDL.

II.  Similar or Identical Issues in Recall MDL

Plaintiff asserts that the issues raised by the remand motion are unique to this case and are not likely to arise in the Recall MDL.  Plaintiff points out that this action was brought as a state enforcement action initiated in state court whereas the cases currently in the Recall MDL are all class actions filed in federal court and allege both state and federal claims.  Plaintiff further asserts that the Recall MDL concerns children's medications.

Defendants represent that they "have received Civil Investigative Demands from multiple State Attorneys General Offices broadly related to the McNeil recall issues." (Notice Ex. P at 35.) The exhibit attached to the Recall Plaintiffs' complaint clearly lists Motrin IB as one of the medications involved in the litigation. The Recall Plaintiffs also allege violations of all of the states consumer protection statutes.

It is undeniable that the MDL court will have to consider the FDA's cGMP and recall regulations during the pendency of the Recall MDL. It also appears very likely that the judge will at some point address the relationship between the state consumer protection statutes and the Act. Because the issues in the remand motion are both complicated and likely to arise in the Recall MDL, the three factors relevant to a motion to stay must be considered.

*Motion to Stay*

I. Prejudice to Non-Moving Party if Stayed

Plaintiff argues that it will suffer substantial and undue hardship if forced to litigate this action in Pennsylvania based on the loss of control over the pace and scope of the litigation and the added expense. The hardships identified by Plaintiff relate to the transfer of the case to the Recall MDL, rather than the hardships caused by the issuance of a stay. As noted by Defendants, Plaintiffs do not, and really can not, identify any additional burdens caused by a stay of this action pending resolution of Plaintiff's objection to the conditional transfer. The Panel has indicated that the usual "lag time" between the filing of an action and its identification as a potential tag-along action and the issuance of a final order is about three or four months. *In Re: Asbestos Products Liability Litigation*, 560 F.Supp.2d 1367, 1369 n.2 (U.S. Jud. Pan. Mult. Lit. 2008). Plaintiffs will suffer very little, if any, prejudice from staying this case pending a final determination on the transfer.

Page 11- OPINION AND ORDER                                                                 *{SIB}*

II.  Hardship and Inequity to Moving Party if Not Stayed

Defendants argue that in the absence of a stay, they could be forced to litigate jurisdictional issues and engage in duplicative discovery in multiple courts pending the decision on the transfer to the Recall MDL, increasing costs and subjecting them to possible conflicting results.  Plaintiffs argue that Defendants will not be prejudiced by a denial of the stay noting that the remand motion will have to be litigated in any event, competent counsel is available in the state of Oregon, and, based on their argument that this remand motion is unique, duplicate litigation is not likely.

The court disagrees with Plaintiff's assertions in light of the finding that the issues raised in Plaintiff's motion to remand will be addressed by the court in Recall MDL.  It is clear that if Defendants are forced to defend the motion to remand and engage in pretrial matters and discovery in this court pending the ruling on the transfer to the Recall MDL, they will suffer prejudice in both time and expense, and may well be subject to conflicting rulings which may be invalid or overruled, if the transfer is eventually granted.

III.  Effect on Judicial Resources

Plaintiff again argues that because this case is factually and legally distinct from the Recall MDL, a stay would not save judicial resources or promote consistency.  Again, as noted above, this case raises issues likely to be addressed by the court in the Recall MDL.  Allowing one court the opportunity to address all these issues facilitates both consistency and efficiency.

*Conclusion*

The issues raised in the remand motion are complicated and are likely to arise in the Recall MDL, and the interest of judicial economy and consistency far outweigh any possible harm to Plaintiff resulting from a brief stay.  Defendants' motion (#4) to stay is GRANTED.  All activities

in this matter, including the motion (#14) to remand, are STAYED pending possible transfer of this action to the Recall MDL.

DATED this 8th day of April, 2011.

JOHN V. ACOSTA
United States Magistrate Judge