# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

**STATE OF OREGON**, *ex rel.* **JOHN R. KROGER**, Attorney General of Oregon

        Plaintiff,

    v.

**JOHNSON & JOHNSON, MCNEIL-PPC, INC.**, and **MCNEIL HEALTHCARE, LLC**,

        Defendants.

Case No.3: 11-CV-86SI

**OPINION AND ORDER**

JOHN R. KROGER
Attorney General of Oregon
DAVID A. HART
Assistant Attorney-in-Charge
ROGER J. DE HOOG
Senior Assistant Attorney General
MERRILL A. MAIANO
Assistant Attorney General
1515 SW 5th Avenue, Suite 410
Portland, OR 97201

    Of Attorneys for Plaintiff

JAMES T. McDERMOTT
DWAIN M. CLIFFORD
Ball Janik LLP
101 SW Main Street, Suite 1100
Portland, OR 97204

ETHAN M. POSNER
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004

    Of Attorneys for Defendants

Page 1 – OPINION AND ORDER

**SIMON, District Judge.**

## SUMMARY OF CASE

The State of Oregon ("Plaintiff") originally filed this action in Multnomah County Circuit Court against Johnson & Johnson and its subsidiaries McNeil-PPC, Inc. and McNeil Healthcare, LLC (collectively, "Defendants"), asserting multiple claims under the Oregon Unlawful Trade Practices Act ("UTPA") (Or. Rev. Stat. §§ 646.605-56). Defendants removed the action to this court, asserting that federal question jurisdiction exists for two reasons: first, because the state claims necessarily raise substantial and disputed issues of federal law, and second, because they are completely pre-empted by the federal Food, Drug, and Cosmetics Act, 21 U.S.C. §§ 301-399 ("FDCA"). Plaintiff timely moved for remand. (Doc. 14.) For the reasons that follow, Plaintiff's motion is GRANTED, and this case is remanded to the Multnomah County Circuit Court for the State of Oregon.

## STATEMENT OF FACTS

Defendants manufacture, promote, and sell Motrin® IB caplets ("Motrin"), a brand of ibuprofen available without a prescription. Compl. ¶ 13. Plaintiff alleges that, during routine testing at Defendants' plant in Puerto Rico in November 2008, Defendants discovered that Motrin lot SHC003 "failed to dissolve at the rate required by specifications for good manufacturing practices." *Id.* ¶ 17. Defendants reported the dissolution failure to the Food and Drug Administration ("FDA") through an initial Field Alert Report ("FAR"). *Id.* ¶ 19. According to the complaint, Defendants did not notify wholesalers, retailers or consumers of the allegedly defective Motrin, and at least one wholesaler continued to ship Motrin to Oregon retailers. *Id.* ¶ 20.

In a follow-up FAR to the FDA, Defendants asserted that the affected Motrin "is not likely to cause an increased risk of serious adverse health consequences," but that consumers "might be receiving less than the expected dose of ibuprofen." *Id.* ¶ 23. Instead of conducting a public recall, Defendants allegedly hired another company to purchase the potentially affected Motrin from store shelves around the country, including in Oregon. *Id.* ¶¶ 25-26, 30. Plaintiffs assert that Defendants waited until February 2010 to notify publicly retailers and wholesalers that certain lots of Motrin were potentially defective. *Id.* ¶ 47.

On January 11, 2011, Plaintiff sued Defendants under Oregon's UTPA on four grounds. First, Plaintiff claims Defendants willfully represented that their product "conformed with current good manufacturing practices" and was "effective for [its] intended use" when they knew it may not be, thereby misrepresenting the drug's benefits and qualities in violation of Or. Rev. Stat. § 646.608(1)(e). Second, Plaintiff claims Defendants willfully failed to disclose that their product "may not have been manufactured consistent with current good manufacturing practices," thereby creating a likelihood of misunderstanding as to the source, sponsorship, approval or certification of goods in violation of Or. Rev. Stat. § 646.608(1)(b). Third, Plaintiff claims this willful nondisclosure also constituted a misrepresentation of the product's standard, quality or grade in violation of Or. Rev. Stat. § 646.608(1)(g). Finally, Plaintiff claims Defendants willfully failed to disclose that their product "may have been ineffective for [its] intended use," which constituted an unconscionable tactic related to the sale of goods in violation of Or. Rev. Stat. § 646.607. For these alleged violations of Oregon's UTPA, Plaintiff seeks damages, attorney fees and costs, and full restitution to all Oregon purchasers of the potentially defective Motrin, as well as an injunction ordering Defendants to comply with good

manufacturing practices and to "clearly and conspicuously post the existence" of any recall it undertakes of a product advertised or sold in Oregon.

Plaintiff alleges in three of its claims that the Oregon UTPA was violated because Defendants did not disclose that their product "may not have been manufactured consistent with current good manufacturing practices." Although not explicit in the complaint, the term "current good manufacturing practices" ("cGMPs") refers to certain regulations promulgated by the FDA pursuant to the FDCA. These regulations set out the baseline "methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess." 21 C.F.R. § 210.1(a). Failure to comply with cGMPs renders a drug "adulterated." *Id.* § 210.1(b).

Defendants removed the case to this court on January 24, 2011. Their notice of removal asserted that federal-question jurisdiction exists because the complaint raises questions about the FDA's conduct; alleges violations of the FDA's cGMP regulations; and asserts claims that are pre-empted by the FDCA. Defendants also moved to stay the case in this court pending the decision of the U.S. Judicial Panel on Multidistrict Litigation, which conditionally transferred the case in February 2011 to the U.S. District Court for the District of Eastern Pennsylvania. Plaintiff opposed both the transfer and the request for a stay and separately filed a motion for remand. Magistrate Judge Acosta granted Defendants' motion to stay on April 8, 2011. The U.S. Judicial Panel on Multidistrict Litigation vacated its conditional transfer order on May 20, 2011, and denied Defendants' motion for reconsideration on August 8, 2011. The case was reassigned to me on September 8, 2011.

Page 4 – OPINION AND ORDER

## DISCUSSION

### I. Legal Standards

A civil action may be removed from state court to federal court if the federal district court would have had original jurisdiction over it. 28 U.S.C. § 1441(a). When there is no diversity of citizenship, and there is none in this case,[1] removal is proper if a federal question is apparent on the face of the plaintiff's well-pleaded complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The well-pleaded complaint rule makes the plaintiff the master of the claim, able to avoid federal jurisdiction by relying exclusively on state law. *Id.* This rule is a "powerful doctrine [that] severely limits the number of cases in which state law 'creates the cause of action' that may be initiated or removed to federal district court . . . ." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983). Notwithstanding this rule, "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Id.* at 22. A defense that raises a federal question, however, does not confer federal jurisdiction, even if the complaint anticipates the defense and even if both parties agree that the defense is the only issue in dispute. *Id.* at 14; *see also Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152-53 (1908).

In the vast majority of cases coming under the federal-question jurisdiction of 28 U.S.C. § 1331, the complaint invokes a federally created cause of action. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). When the plaintiff pleads solely state causes of action, as Oregon has done here, federal-question jurisdiction "is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law." *Franchise Tax Bd.*,

---

[1] A State is not a "citizen" for purposes of diversity jurisdiction. *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973).

Page 5 – OPINION AND ORDER

463 U.S. at 13. That is, even when there is no federal cause of action, federal-question jurisdiction may nonetheless exist if the complaint necessarily raises a substantial and disputed question of federal law, *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), or if federal law completely pre-empts the state law claim, *see Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003). Defendants argue that both circumstances are present in this case.

A motion to remand is the proper procedure for challenging removal. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). On a motion to remand, the party seeking removal bears the burden of establishing that removal is proper. *Id.* The removal statute is strictly construed, and the court resolves any doubt in favor of remand. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam).

## II.     Substantial and Disputed Federal Issue

Defendants argue that federal-question jurisdiction exists over the present case because Plaintiff's claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. In *Grable*, the Internal Revenue Service ("IRS") had seized the plaintiff's property and sold it to the defendant. *Id.* at 310. The plaintiff brought a quiet title action in state court, alleging that the defendant's title was invalid because the IRS had not properly notified the plaintiff of the seizure. *Id.* at 311. The Supreme Court held that federal-question jurisdiction existed over the plaintiff's state claim because: (1) an integral element of the plaintiff's claim was that the IRS had not satisfied the notice provisions required by federal statute; (2) the meaning of that statute was actually in

dispute (indeed, it appeared to be the only issue in dispute); (3) the federal government had a strong and particular interest in ensuring correct interpretation and enforcement of its tax laws; and (4) rarely would any other state title action raise similar federal issues, such that recognizing federal jurisdiction in *Grable* would not significantly disturb the division of labor between state and federal courts. *Id.* at 315.

The Supreme Court has stressed, however, that *Grable* is the rare exception to the general rule that federal-question jurisdiction exists only where there is a federal cause of action. *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). The mere presence of a federal issue in a state suit does not, by itself, give rise to federal-question jurisdiction. *See id.* at 701; *Merrell Dow*, 478 U.S. at 813. In *Merrell Dow*, which is a more typical case, the plaintiffs alleged that the defendant had "misbranded" its drug Bendectin in violation of the FDCA and that this violation created a rebuttable presumption of negligence in a state tort action. *Id.* at 805-06. The Supreme Court held that reliance on an FDCA standard to prove an element of a state cause of action did not, by itself, confer federal jurisdiction. *Id.* at 817. The Court emphasized that Congress had not created a private right of action to enforce the FDCA in federal courts; thus, the Court reasoned, it would flout congressional intent to allow such claims for private relief into federal court through the backdoor of state causes of action. *Id.* at 811-12. Similarly, Congress's determination that there was no need for a private, federal remedy for FDCA violations indicated that FDCA issues embedded within state claims were insufficiently "substantial" to necessitate federal jurisdiction. *Id.* at 814.

This case falls within the broader *Merrell Dow* category of cases, not least because it involves the same regulatory regime at issue in *Merrell Dow*. There may be at least one stated federal issue that is "necessary" to plaintiff's claims, but that issue does not satisfy the remaining

three prongs of the *Grable* analysis: it is not actually disputed, it is not substantial, and the invocation of federal jurisdiction over it would upset the balance of state and federal judicial responsibilities.

### A.  Is the Federal Issue Necessary?

Defendants focus on several federal issues that are only tangential to Plaintiff's claims. Contrary to Defendants' arguments, the complaint does not turn on whether Defendants should have conducted a public recall or whether FDA officials should have required one. Plaintiff has alleged that Defendants undertook a "secret" recall not to challenge that conduct as a violation of federal law, but only as evidence of Defendants' knowledge that their product may have been defective, as well as evidence of Defendants' decision not to disclose that information publicly. *Cf. Pennsylvania v. Eli Lilly & Co., Inc.*, 511 F. Supp. 2d 576, 581-82 (E.D. Pa. 2007) (no federal jurisdiction where plaintiff alleged defendants promoted their products in violation of the FDCA only to demonstrate defendants' *awareness* of tortious misrepresentations). Similarly, Plaintiff could prove its claims without drawing into question the FDA's handling of the Motrin recall. Thus, the issues of (1) whether the FDCA regime required Defendants to conduct a public recall and (2) the conduct of FDA officials in approving or not approving Defendants' plans to forego a public recall are not necessary to Plaintiff's complaint and are therefore insufficient to confer jurisdiction. The only federal issue that may be necessary to Plaintiff's state claims is whether Defendants' manufacturing processes conformed with cGMPs.[2]  That federal issue does not, however, satisfy the remaining prongs of the *Grable* analysis.

///

///

---

[2] The court does not need to decide whether the cGMP issue is in fact "necessary" to Plaintiff's claims, given that the other elements of the *Grable* analysis demonstrate that federal jurisdiction is lacking.

Page 8 – OPINION AND ORDER

## B. Is the Federal Issue Actually Disputed?

To raise an "actually disputed" federal issue, a state cause of action must "really and substantially involve[e] a dispute or controversy respecting the validity, construction or effect of [federal] law." *Grable*, 545 U.S. at 313 (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912)) (alterations in original) (quotation marks omitted). In *Grable*, for example, the state claim turned on the interpretation of "service" under the federal tax statute. In contrast, there is no apparent dispute here over the meaning or construction of "cGMPs." Plaintiff's claims turn instead on Defendants' alleged awareness and nondisclosure of a potential defect in their product; the reference to cGMPs serves only as a short hand for what Defendants were implicitly representing and warranting their product to be. In that sense, whether Defendants complied with cGMPs is primarily a factual inquiry—not a disputed legal question that could give rise to federal jurisdiction.[3] *See, e.g.*, *Hawaii v. Abbott Labs., Inc.*, 469 F. Supp. 2d 842, 853 (D. Haw. 2006) (rejecting federal jurisdiction where embedded federal standard was only a peripheral issue and there was no real disagreement over its proper construction); *Pennsylvania v. Tap Pharm. Prods., Inc.*, 415 F. Supp. 2d 516, 526 (E.D. Penn. 2005) (rejecting federal jurisdiction where there was no dispute over the proper construction of federal law); *cf. In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d 77, 81 (D. Mass. 2006) (finding federal jurisdiction where the "determination of the actual meaning [of a federally defined term] under the Medicare statute has been hotly disputed in the multi-district litigation and is a crucial component of plaintiff's theory of liability"). The interpretation or application of the cGMP

---

[3] Defendants assert that the disputed federal issue need not be a pure question of law, citing *Air Measurement Technologies, Inc. v. Akin Gump*, 504 F.3d 1262, 1272 (Fed. Cir. 2007). *Air Measurement Technologies*, however, merely noted that the *Grable* Court relied primarily on the substantiality and federalism prongs of its jurisdictional test. Following suit, the Federal Circuit emphasized in *Air Measurement Technologies* the strong federal interest in adjudicating patent infringement cases, cases which inherently require the analysis and application of federal law; it did not conclude that a dispute that is primarily factual could be sufficient to confer federal jurisdiction. *See id.*

Page 9 – OPINION AND ORDER

regulations is not actually disputed in the present case, which means the presence of the cGMP issue in Plaintiff's complaint does not support federal jurisdiction.

### C.  Is the Federal Issue Substantial?

Alternatively, the cGMP issue is not sufficiently substantial to confer federal jurisdiction. By a "substantial" federal issue, the *Grable* Court meant "a serious federal interest in claiming the advantages thought to be inherent in a federal forum," one that "justif[ies] resort to the experience, solicitude, and hope of uniformity that a federal forum offers." *Grable*, 545 U.S. at 312-13. Despite defendants' arguments to the contrary, the application of the FDCA regulatory regime is not a federal interest that requires the experience, solicitude, or uniformity provided by federal courts.[4] To the contrary, the Supreme Court has recognized that state courts have traditionally handled state claims with embedded FDCA standards. *See Wyeth v. Levine*, 555 U.S. 555, 574-75 (2009); *Merrell Dow*, 478 U.S. at 814-17. Indeed, the Supreme Court noted that even a *novel* FDCA issue raised as part of a state cause of action would not typically justify the exercise of federal jurisdiction. S*ee Merrell Dow*, 478 U.S. at 817.

Regarding the FDCA regime in particular, the Supreme Court has put great weight on Congress's decisions (1) not to create a federal remedy for violations of the FDCA, *id.* at 814, while (2) selectively declining to pre-empt most state causes of action based on FDCA standards, *see Wyeth*, 555 U.S. at 574-75. *See also Grable*, 545 U.S. at 318 (summarizing *Merrell Dow*'s reasoning regarding the FDCA regime). That is, Congress has affirmatively decided to keep such actions out of federal courts while tolerating overlapping regulation and litigation in state forums. All of this strongly suggests there is no need in drug-related consumer protection cases

---

[4] *West Virginia ex rel. McGraw v. Eli Lilly & Co.*, 476 F. Supp. 2d 230 (E.D.N.Y. 2007), cited by the Defendants, is not to the contrary. That court clarified that its finding of removal jurisdiction was based not on the FDCA regulations implicated in the complaint, but on the need for uniform application of the Medicaid regulations on which the complaint turned. *Id.* at 233-34. Unlike in *McGraw*, the federal question in the present suit does *not* "extend beyond the definition of a single federal statutory term." *Id.* at 234.

Page 10 – OPINION AND ORDER

for the "experience, solicitude, and hope of uniformity that a federal forum offers." *Grable*, 545 U.S. at 312. Within the context of the FDCA regime in particular, the Supreme Court has therefore concluded "that the presence of a claimed violation of the [FDCA] statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 814.

### D. Balance of Federal and State Judicial Responsibilities

The substantiality and federalism prongs of *Grable* are closely intertwined. For the same reasons that an embedded FDCA standard does not generally constitute a "substantial" federal issue, the Supreme Court has concluded that Congress did not intend to preclude state courts from hearing FDCA-related actions. *See Wyeth*, 555 U.S. at 574. Indeed, it is not unprecedented for a state court to hear a state claim incorporating the cGMP standards. *See, e.g.*, *Newly Wed Foods, Inc. v. Superior Nut Co., Inc.*, 2010 WL 1178404 (Mass. Super. Feb. 18, 2010) (finding nut manufacturer engaged in unfair trade practices where manufacturer failed to warn of potential allergens in breach of cGMPs). The "widely available state rights of action" in food and drug cases, *Wyeth*, 555 U.S. at 574, also indicate that recognizing federal jurisdiction over such actions could "attract[] a horde of original filings and removal cases raising other state claims with embedded federal issues." *Grable*, 545 U.S. at 318 (discussing *Merrell Dow*). Finding federal jurisdiction here could open the federal courthouse door to "a tremendous number of cases, *id.*, and could therefore upset the congressionally approved division of labor between state and federal courts.

In sum, the reference to cGMPs in some of Plaintiff's claims may constitute a "necessary" federal issue, but that issue is neither actually disputed nor substantial, and recognizing federal jurisdiction over it would disrupt the balance struck by Congress between

Page 11 – OPINION AND ORDER

state and federal judicial responsibilities. It therefore does not give rise to federal jurisdiction under 28 U.S.C. § 1331, making removal improper under 28 U.S.C. § 1441.

### III.     Complete Pre-emption

Defendants also argue that removal is proper based on an assertion of complete pre-emption. Federal pre-emption typically arises as a defense; as such, it cannot serve as the basis for federal-question jurisdiction under the well-pleaded complaint rule. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); *Caterpillar*, 482 U.S. at 392-93. There is a narrow exception to this general rule, however, that applies when Congress has "so completely pre-empt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life*, 481 U.S. at 63-64. Under the theory of complete pre-emption, the federal statute "wholly displaces the state-law cause of action" such that "a claim which comes within the scope of that [federal] cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank*, 539 U.S. at 8. The state claim is then re-characterized as a federal claim, giving rise to federal-question jurisdiction.

The Supreme Court has only found "complete pre-emption" in the context of a few federal statutes: § 301 of the Labor Relations Management Act; § 502(a) of the Employee Retirement Income Security Act; and § 86 of the National Bank Act. *See id.* at 7-11. As Justice Brennan has cautioned, complete pre-emption is extremely rare, and in cases involving other statutes, "the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court." *Metropolitan Life*, 481 U.S. at 67-68 (Brennan, J., concurring).

In *Beneficial National Bank*, the Supreme Court phrased the "dispositive question" as "Does the National Bank Act provide *the exclusive cause of action* for usury claims against

Page 12 – OPINION AND ORDER

national banks? If so, then the cause of action necessarily arises under federal law and the case is removable." 539 U.S. at 9 (emphasis added). Defendants here would phrase the dispositive question in this case as "Does the FDCA provide the exclusive cause of action for enforcing the FDCA and related regulations?" But Plaintiff does not seek to enforce the FDCA. The correct question is, "Does the FDCA provide the exclusive cause of action for consumer protection claims against nonprescription drug manufacturers?" The answer to that question is "No."

Defendants emphasize that the FDCA lacks any private right of action and vests nearly exclusive enforcement authority in the federal government. *See* 21 U.S.C. § 337(a).[5] The fact that there is no private right of action under the FDCA does not, however, displace all other causes of action that incorporate FDCA standards. *See, e.g.*, *Wyeth*, 555 U.S. at 581 (holding that the FDCA does not pre-empt a state-law failure-to-warn action regarding a drug's labeling); *Loreto v. Procter & Gamble Co.*, 737 F. Supp. 2d 909, 919 (S.D. Ohio 2010) (absence of private right of action to enforce FDCA "does not mean … that state law claims are completely precluded simply because the conduct violates the FDCA"). The *Loreto* case, upon which Defendants rely, carefully distinguished between state claims that merely recite FDCA violations and are thus a disguised effort to enforce the federal statute, and those alleging that a defendant's noncompliance with the FDCA regime misled and thereby harmed consumers. 737 F. Supp. 2d at 919-22. Defendants' attempt to recast Plaintiff's claims to be the former is not persuasive; Plaintiffs' claims are simply the latter. Plaintiff has alleged that Defendants knowingly misled distributors and Oregon consumers into believing that Defendants' product met FDA standards and that this *misrepresentation* harmed Oregon consumers. Such claims do not seek to enforce a

---

[5] Section 337(a) provides that, "[e]xcept as provided in subsection (b) of this section, all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."

Page 13 – OPINION AND ORDER

federal statute, but to vindicate a traditional area of state authority – the protection of consumers from allegedly deceptive trade practices.

The Supreme Court has previously made clear that the FDCA regime leaves ample room for such state causes of action. For example, the Supreme Court concluded in *Wyeth* that Congress's decision not to expressly pre-empt state causes of action regarding prescription drugs, "coupled with its certain awareness of the prevalence of state tort litigation, is powerful evidence that Congress did not intend FDA oversight to be the exclusive means of ensuring drug safety and effectiveness." 555 U.S. at 575. Indeed, the Supreme Court has interpreted Congress's decision to omit a private right of action under the FDCA as evidence that Congress had "determined that widely available state rights of action provided appropriate relief for injured consumers." *Id.* at 574. State consumer-protection statutes such as Oregon's UTPA are part of the common-law infrastructure that often overlaps with the FDCA, but is not extinguished by it.

If more evidence were needed that Congress never intended the FDCA to restrict litigants to an exclusively federal cause of action over which federal jurisdiction necessarily arises, the enforcement provisions of the FDCA themselves suggest otherwise. Regarding nonprescription drugs in particular, Congress has explicitly preserved the right of States to "enforc[e], *under any relevant civil or other enforcement authority*, a requirement that is identical to a requirement of this chapter." 21 U.S.C. § 379r(f) (emphasis added). Similarly, § 379r(e) leaves untouched "the liability of any person under the product liability law *of any State*" (emphasis added). Of course, Defendants are still free to argue that these or other provisions of the FDCA pre-empt Plaintiff's particular claims – but that is a defense they may raise before the state court; it does not establish complete pre-emption such that federal jurisdiction would be conferred. These provisions are cited here only to further illustrate Congress's intent that the FDCA does not provide the

*exclusive* cause of action for consumer protection claims against nonprescription drug manufacturers.

At oral argument, Defendants also suggested that Plaintiff's specific request for injunctive relief is implicitly pre-empted by the FDCA.[6] Hr'g Tr. 29-30, Oct. 19, 2011. This may or may not be true, but the question only arises as a defense to Plaintiff's complaint and therefore does not give rise to federal jurisdiction. *See, e.g.*, *Caterpillar*, 482 U.S. at 392-93.

In short, Plaintiff's claims are not completely pre-empted by federal law. The state claims therefore do not "aris[e] under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and this court lacks subject-matter jurisdiction over them.

## CONCLUSION

Plaintiff's motion for remand (Doc. 14) is GRANTED and the case is REMANDED to the Multnomah County Circuit Court for the State of Oregon.

IT IS SO ORDERED.

Dated this 7th day of December, 2011.

                                                                                                          /s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

[6] Plaintiff requests an injunction ordering that, "[s]hould Defendants recall any product promoted, advertised, offered for sale or sold in Oregon, Defendants shall clearly and conspicuously post the existence of the recall …." Compl. ¶ 82(a)(iv).

Page 15 – OPINION AND ORDER